United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALANE TOLOSKO-PARKER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF SONOMA, et al.,<br><br>　　　　　Defendants.<br>_____ | No. C 06-06841 CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT** |
| ROBERT CASTRO, DOUGLAS RICHEY,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>COUNTY OF SONOMA, et al..<br><br>　　　　　Defendants.<br>_____ | No. C 06-06907 CRB |

　　　Before the Court is Defendants' Motion for Summary Judgment on Plaintiffs' claims brought under 42 U.S.C. § 1983, various state laws, and the Americans with Disabilities Act ("ADA"). After reading and considering the arguments presented, the Court GRANTS Defendants' motion as to all claims.

## I. BACKGROUND

The instant action arises from the tasering of Michael Tolosko on December 7, 2005. Tolosko's mother had called the police to restrain her son and transport him to Oakcrest, the county mental health hospital. In response, Sonoma County Sherriff's Deputies were dispatched to Tolosko's home. Tolosko attacked the deputies. In attempting to restrain Tolosko, the deputies deployed their tasers. Two sets of handcuffs and a maximal restraint cord ("MRC")[1] were required to bring Tolosko under control.

Back-up deputies arrived and carried Tolosko out of the garage. The officers noticed that he was having trouble breathing, called for an ambulance, and immediately began administering CPR. Tolosko was taken to a Sonoma hospital and pronounced dead shortly thereafter. The coroner concluded that Tolosko's death was caused by cardiorespiratory arrest due to agitated psychosis. In laymen's terms, Tolosko died of a heart attack caused by his longstanding and untreated psychiatric illness. The coroner also found that Tolosko suffered from heart disease and that his heart was enlarged in relation to his body size.

Plaintiff Alane Tolosko-Parker, Tolosko's mother, filed this action on November 3, 2006. She brings eleven causes of action against the County of Sonoma, the Sonoma County Sheriff's Department, Sonoma County Sheriff Bill Cogbill, Sonoma County Sheriff's Deputies Ricky Bostic and Jake Vivian, the City of Sonoma, the City of Sonoma Police Department, City of Sonoma Police Chief Paul Day, City of Sonoma Police Officers Patrick Sharp and Travis Koeppel, and Taser International, Inc.[2] In her complaint, Tolosko-Parker alleges wrongful death under 42 U.S.C. § 1983, deprivation of familial relationship, violation of California Civil Code § 52.1 (Bane Act), assault and battery, police negligence, intentional infliction of emotional distress and violation of Title II and Title III of the ADA. The Court subsequently consolidated Tolosko-Parker's case with a suit brought by Robert F. Castro

---

[1] An MRC is a nylon cord, one end is tied around the subject's hips and the other end wrapped around the feet of a subject. The cord is then clasped at the mid-section between the buttocks and feet, so that the subject can no longer kick his legs.

[2] Taser International, Inc. subsequently settled with Plaintiffs and is no longer a party to this suit.

2

(decedent's biological father), Anna Maria Castro (decedent's sister),[3] and Douglas Richey (decedent's half-brother). The suit brought by these plaintiffs alleges many of the same causes of action, and also makes a claim for false imprisonment.

On January 8, 2007 the Court granted Plaintiff Tolosko-Parker's motion for administrative relief from deadlines, granting her an additional 45 days to serve the defendants. On February 14, Tolosko-Parker's attorney again moved the court for administrative relief from deadlines, requesting an additional 15 days with which to serve defendants. Tolosko-Parker's counsel also requested that she be allowed to withdraw as counsel. The Court granted the motion to withdraw on April 6, 2007. On July 13, 2007, new counsel appeared for Plaintiff Tolosko-Parker.

In February 2008 the Court set the consolidated cases for trial commencing December 1, 2008. Counsel for Tolokso-Parker moved to withdraw on September 23, 2008, and in anticipation of the upcoming trial date, defendants moved for summary judgment noticed for hearing on November 21, 2008.

At a hearing on October 31, 2008 the Court granted the September 23 motion to withdraw and informed Tolosko-Parker, in writing, of her summary judgment burden. In order to give Tolosko-Parker additional time to once again obtain new counsel, the Court continued the hearing on defendants' summary judgment motions as to all parties for three months.

Though given an additional 90 days to oppose the motion for summary judgment, plaintiffs failed to file any opposition with the Court. Tolosko-Parker, proceeding *pro se*, filed a joinder in any opposition filed by Plaintiffs Castro and Richy; however, Castro and Richy never filed an opposition. Instead, on February 11, nearly a month after oppositions were due, Castro and Richey filed a notice of voluntary dismissal without prejudice. Defendants objected and the Court did not grant the dismissal. No plaintiff appeared at the February 20 hearing on defendants' motion for summary judgment and they did not

---

[3] Plaintiff Anna Maria Castro dismissed all of her claims without prejudice on July 6, 2007.

3

otherwise communicate with the Court.  Accordingly, defendants' motions for summary judgment are now ripe for decision.

**II.    DISCUSSION**

    **A.  Standard of Review**

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett , 477 U.S. 317, 323-24 (1986).  A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (here the defendants) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  Nissan Fire & Marine Ins. Co. v. Fritz Cos. , 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  Nissan Fire & Marine Ins. Co. , 210 F.3d at 1102.  A genuine issue of fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248-49 (1986).

In determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact."  Keenan v. Allan , 91 F.3d 1275, 1279 (9th Cir.1996) (internal quotations omitted).  Rather, a court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.  See id.

///
///
///

4

**B. Analysis**

    *1. Section 1983*

        *a. The Record Does Not Support a Finding of a Constitutional Violation*

Plaintiffs first claim the defendants used unconstitutional excessive force. Claims of excessive force which arise in the context of an arrest, detention, or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. 386, 394-95 (1989); Forrester v. City of San Diego, 25 F.3d 804, 806 (9th Cir. 1994), cert. denied 513 U.S. 1152 (1995).

Plaintiffs have failed to establish any genuine issue as to any material fact regarding the force used. Determining whether the force used is "reasonable" under the Fourth Amendment requires a careful balance of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake. Graham, 490 U.S. at 396 (citations omitted). The "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Id. at 397. The proper application of the "reasonableness" test requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest or attempting to evade arrest by flight. Id. at 396. An officer's conduct is judged based upon the circumstances and facts relevant to the determination made by the officer at the time the conduct is performed; if an officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation, the officer has acted in conformity with the Constitution. Id. at 397.

The undisputed facts establish that the conduct of all four officers was entirely reasonable given the circumstances. Here, the deputies attempted informal contact with Tolosko to try and assess his condition. Tolosko, however, attacked the officers and a physical altercation ensued. The officers used the taser as a pain compliance tool, in an effort

5

to subdue Tolosko and bring him under control. Tolosko's attack the deputies and subsequent struggle posed a risk to both himself and the officers. Even after tased and restrained, Tolosko continued to thrash and kick, requiring a second set of handcuffs and an MRC. The coroner found no evidence of excessive force.

Plaintiffs also claim that defendants were deliberately indifferent to Tolosko's rights. When a subject disobeys commands, acts erratically, or resists arrest, the Fourth Amendment allows the use of reasonable force and restraining a person in the prone position is not of itself excessive force. Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 590 (7th Cir. 1997). Failure to notice that a subject is in distress or stops breathing does not amount to deliberate indifference of a subject's civil rights. Tatum v. City and County of San Francisco, 441 F.3d 1090, 1098 (9th Cir. 2006). Moreover, a police officer need not administer CPR if he or she promptly summons the necessary medical assistance and otherwise acts reasonably for purposes of a Fourth Amendment inquiry. Id. at 1099.

Here, the undisputed evidence establishes that Tolosko was disobeying verbal commands, was incomprehensible, exhibiting erratic behavior, and resisting. Under these circumstances, the officers were fully authorized to use reasonable force, and as explained above, the use of force was reasonable as a matter or law. Moreover the deputies immediately noticed that Tolosko was in distress and having trouble breathing. Not only did they summon the necessary medical attention, but one deputy personally administered CPR. In these circumstances no reasonable jury could find tha defendants were deliberately indifferent.

*b. Qualified Immunity Bars Claims Against Individual Officers*

Plaintiffs' section 1983 claims also fail because, at a minimum, the individual defendants are entitled to qualified immunity. A tripartite test is applied in order to determine if a defendant is entitled to qualified immunity. Kelly v. Borg, 988 F.2d 868, 871 (9th Cir. 1993). A court must (1) identify the specific right allegedly violated; (2) determine if the right was so "clearly established" as to alert a reasonable officer to its constitutional

///

parameters; and (3) determine whether a reasonable officer could have believed the particular conduct at issue was lawful. Id.

Application of the test compels judgment in favor of the defendants. First, no clearly established right of either plaintiffs or Tolosko was violated, as set forth above. More importantly, no reasonable officer could have believed that responding to this rapidly evolving situation as the deputies did was unlawful. The attempted use of the taser device was in no way contrary to existing law; the coroner testified that the struggle resulted in no apparent injuries; and the use of the MRC was appropriate given Tolosko's unrelenting struggle, even after he had been handcuffed. Within two minutes of applying the MRC, the officers carried Tolosko into the open air, it was then that they discovered his apparent distress, and the deputy immediately began resuscitation efforts.

### *c. No Constitutional Claim Against Supervisors or Entity Defendants*

The claims against the supervisors and entity defendants fail because there is no evidence supporting a constitutional claim against the individual deputies, thus, there is no causal link between a municipal policy and any constitutional violation. Without liability on behalf of the officers, there is no liability on behalf of the supervisors or entity defendants. Forrerster, 25 F.3d at 808.

### *2. Plaintiffs' Survival Claim Fails Because There is No Underlying Constitutional Violation*

Plaintiff Tolosko-Parker and Plaintiff Richard Castro also seek relief in their capacity as successor-in-interest to their son's estate and assert claims on his behalf for violations of his constitutional rights. However, as explained above, Tolosko's constitutional rights were not violated; thus the survival claim fails for the same reasons set forth with regard to the § 1983 action.

### *3. No Constitutional Right to "Familial Relations" Separate from Fourth Amendment*

Tolosko-Parker's wrongful death claim pursuant to § 1983 is the vehicle by which she may assert a claim for interference with the right to familial relations. Tolosko-Parker seeks

7

the very same damages under her survival claim that she would be entitled to if she were able to establish the elements of an underlying Fourth Amendment violation of Tolosko. Accordingly, the separate familial relations claim is dismissed as duplicative.

### *4. Tolosko-Parker's Bane Act Claim Fails as a Matter of Law*

#### *a. No Right to Bring a Claim under § 52.1 on Behalf of Tolosko*

The Bane Act, codified as a component of the Unruh Civil Rights Act at California Civil Code § 52.1 does not provide a right of action for the parents of a decedent; rather, it only provides for a personal cause of action for the person who has been subjected to violence or threats which interfered with that person's constitutional rights. Bay Area Rapid Transit Dist. v. Superior Court fo Alameda Co., 38 Cal.App.4th 141, 144 (Cal. Ct. App. 1995). Accordingly, Tolosko-Parker's survival claim under the Bane Act is barred.

#### *b. No Evidence in Support of a § 52.1 Action on Behalf of Tolosko-Parker*

The elements necessary to establish liability under § 52.1 include the following: (1) defendants interfered with plaintiff's constitutional rights by threatening or committing violent acts; (2) that plaintiff reasonably believed that if she exercised her constitutional rights, defendants would commit violence against her property; (3) plaintiff was harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm. See CACI No. 3025.

The record is devoid of any evidence that defendants have taken any acts, or engaged in any conduct, toward Tolosko-Parker which suggest that they interfered with her constitutional rights. This claim, too, fails.

### *5. Assault, Battery, Police Negligence, and Intentional Infliction of Emotional Distress Claims Fail as a Matter of Law*

All of Plaintiffs' state law causes of action other than Castro's false imprisonment claim (assault and battery, negligence, intentional infliction of emotional distress) are brought in both their individual capacities as well as in their capacity as successors-in-interest to the Tolosko estate. Because no evidence exists that supports a claim that the plaintiffs were,

///

themselves, the subject of any of these torts, defendants are entitled to judgment on the individual claims..

As to the successor-in-interest claims, in order to establish a common law battery claim against a peace officer Plaintiffs must establish each element of the tort: (1) an unprivileged touching, that (2) caused damages. Plaintiffs also have the burden of proving that the use of force was (3) unreasonable. In this regard, the state law tort of assault and battery is inextricably intertwined with the analysis of the § 1983 claim. See Edson v. City of Anaheim, 63 Cal. App.4th 1269 (Cal. Ct. App. 1998). As explained above, plaintiffs fail in their § 1983 claim, because the actions of the deputies were reasonable. The same analysis defeats their assault and battery and other state law causes of action.

### 6. *Castro's False Imprisonment Claim Fails as a Matter of Law*

Plaintiff Castro's false imprisonment cause of action is brought in his individual capacity. There are no facts which would suggest that Castro was imprisoned by defendants.

To the extent that his claim is intended to be brought in his capacity as successor-in-interest, it too fails. A false imprisonment under state law requires "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." Rhoden v. United States, 55 F.3d 428, 430 (9th Cir. 1995) (quoting Fermino v. Fedco, Inc., 872 P.2d 559, 567 (Cal. 1994)).. The requirement that the confinement be "without privilege" cannot be met on the facts of this case, as the defendants acted lawfully in their response to the 911 call for assistance.

### 7. *Tolosko-Parker's Bystander Claim is Dependent Upon a Finding of Wrongdoing by the Defendants*

Assuming that Tolosko-Parker could establish the prima facie elements for their bystander claim, the lack of any wrongdoing vitiates the cause of action. Allen v. Toten, 172 Cal.App.3d 1079, 1084 (Cal. Ct. App. 1985).

///

///

9

///

### 8. *Tolosko-Parker's Claim of Violation of the American's With Disabilities Act is Unfounded*

Plaintiff Tolosko-Parker seeks relief on behalf of Tolosko and alleges that the defendants' conduct deprived Tolosko of benefits and services to which he was entitled on the basis of disability, and the failure to accommodate him amounted to a violation of the ADA. To prevail, Plaintiff must establish: (1) Tolosko was a qualified individual with a disability; (2) he was either excluded from participation in, or denied the benefits of, some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination, was by reason of his disability. Goher v. Enright, 186 F.3d 1216, 1219 (10th Cir. 1999).

Assuming the first element exists, the second element is analyzed one of two ways in the context of police services: either under a "wrongful arrest" theory or a "reasonable accommodation during arrest" theory" Id. These two scenarios differ in that

> [t]he wrongful-arrest scenario occurs when a law enforcement officer arrests an individual after incorrectly perceiving the effects of an individual's disability as illegal conduct. In contrast, the reasonable-accommodation-during-arrest theory is based on a proper investigation or arrest of a person "with a disability for a crime unrelated to that disability." The contention is that the law enforcement officer "failed to reasonably accommodate the person's disability in the course of the investigation or arrest, causing the person to suffer greater injury or indignity int hat process than other arrestees.

Sudac v. Hoang, 378 F. Supp.2d 1298, 1304 (D. Kan. 2005) (citations omitted). The record does not support a finding in favor of plaintiff under either scenario.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: February 26, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE